UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
         :
SHARBU REDD,              :
         :
                                    Petitioner,    :         09 Civ. 9819 (PAE)
         :
              -v-                          :         <u>OPINION & ORDER</u>
         :
CAROL WOUGHTER, *Superintendent of Mohawk*  :
*Correctional Facility*,         :
         :
                                    Respondent.    :
         :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       Sharbu Redd, *pro se* and incarcerated, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing that the New York courts' denial of his motion to withdraw a guilty plea, and his attorney's unwillingness to join in that motion, deprived him of his rights to, respectively, due process under the Fourteenth Amendment and counsel under the Sixth and Fourteenth Amendments. Redd further claims that his sentence of eight years—twice the minimum sentence for the crimes to which he pled guilty—is cruel and unusual under the Eighth Amendment. For the following reasons, the petition is denied.

## I.    Background[1]

       In late 2006 and early 2007, the New York City Police Department conducted a number of undercover drug purchases in Upper Manhattan. In the course of that investigation, Redd was

---

[1] The Court's account of the underlying facts in this case is drawn primarily from the factual summary presented in Redd's brief on his direct appeal in the Appellate Division, First Department. *See* Declaration of Paul Lyons in Opposition to the Petition for a Writ of Habeas Corpus ("Lyons Decl."), Ex. M. Respondent has not disputed this account. Except where this account, or other documents, are specifically quoted, no further citation to the source of background facts will be made.

identified as a source from whom the undercover officers could buy drugs. Initially, the undercover officers called Redd to request drugs, and Redd then put the officers in touch with Joseph Martin, who supplied the drugs. In November 2006, however, the officers began purchasing from Redd directly; the transactions occurred inside an apartment building located on East 129th Street, or just outside that building.

Based on the information obtained during these purchases, the police obtained a warrant to search the apartment of one Eric Davis, who lived in Redd's building. On January 24, 2007, that warrant was executed; the police recovered, *inter alia*, a safe from Davis's apartment, which contained both pre-recorded buy money given by an undercover officer to Redd earlier that day, and a .45 caliber handgun. Redd was subsequently arrested.

On February 5, 2007, a New York County grand jury returned a 12 count indictment against Redd, charging him with multiple counts of both criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree. Because Redd's money was in the safe with the gun, he was also charged with one count of criminal possession of a weapon in the second degree. Lyons Decl. Ex. B.

On December 4, 2007, Redd appeared before a judge to plead guilty to two counts in the indictment—one count of criminal possession of a weapon in the second degree, and one count of criminal sale of a controlled substance in the third degree. Redd's plea colloquy with the Court included, in pertinent part:

> **The Court**: Is it your wish to withdraw your heretofore entered plea of not guilty to this indictment, and are you now offering to plead guilty to criminal sale of a controlled substance in the third degree under the eighth count of the indictment, and are you also offering ot plead guilty to criminal possession of a weapon in the second degree under the twelfth count of the indictment, in full satisfaction of this indictment?
>
> **The Defendant**: Yes.

**The Court**: Are you entering this plea of your own free will?

**The Defendant**: Yes.

[ . . . ]

**The Court**: Have you discussed the case and your plea with your attorney?

[ . . . ]²

**The Court**: Have you had sufficient time to discuss your decision to plead guilty?

**The Defendant**: Yes.

**The Court**: Are you pleading guilty because you are, in fact, guilty of these charges?

**The Defendant**: Yes.

[ . . . ]

**The Court**: Do you understand the charges you're pleading guilty to?

**The Defendant**: Yes.

**The Court**: Has anyone, including the Court, the ADA, your lawyer or anyone else forced or threatened you to enter these pleas of guilty?

**The Defendant**: No.

[ . . . ]

**The Court**: Count twelve charges you with criminal possession of a weapon in the second degree committed as follows:  The defendant, Sharbu Redd, in the County of New York, on or about January 24, 2007, possessed a loaded firearm, to wit:  a pistol, outside of his home or place of business.  Do you admit to that?

**The Defendant**: Yes.

---

² At this juncture, there was a brief colloquy between counsel and the Court on the topic of whether Redd had recently used drugs that might affect his ability to understand the plea proceedings.  This appears to have led the Court to reformulate the above question, as follows in the transcript.

[3]

After taking Redd's guilty plea, the Court informed Redd that he would be sentenced, under the plea agreement, to two determinate sentences of eight years and five years, to run concurrently. Approximately one week after the plea, Redd moved *pro se* to withdraw his guilty plea to the weapon-possession count. In that motion, he acknowledged that the court had advised him of his rights, but that he nevertheless had not realized the full consequences of pleading guilty. Redd wrote into the motion form that he "was being mislead [sic] by [his] lawyer of the plea he wanted me to take. I did not posses[s] a weapon at any time in my life." *See* Lyons Decl. Ex. J.

On January 11, 2008, Redd appeared before the court for sentencing. At that proceeding, the following colloquy ensued:

> **The Court**: All right. Ready for sentence.
>
> **The Defendant**: Excuse me, your Honor, I would like to speak.
>
> **The Court**: Go ahead.
>
> **The Defendant**: Yes. I would like to withdraw my plea from guilty to not guilty because my attorney didn't explain to me what I was pleading to and I don't know why he didn't, but I didn't have no gun in my possession at any time.
>
> **The Court**: You admitted to it.
>
> **The Defendant**: I know, but he didn't explain to me what I was admitting to. I never had a weapon.
>
> **The Court**: Do you understand English? I read the charge to you and you admitted to the charge.
>
> **The Defendant**: Your Honor, I'm sorry, I never been in the criminal system like this before. I didn't understand what you were saying. I never had a weapon.
>
> [ . . . ]
>
> **The Court**: I don't see any reason to allow the plea to be withdrawn.
>
> [ . . . ]

> **The Defendant**: As soon as my attorney came to visit me, he explained to me that I had a gun in my possession. I explained to him at the time of the arrest, I had nothing in my possession. I had nothing on me.
>
> **The Court**: I am not allowing the plea to be withdrawn.
>
> [ . . . ]
>
> **The Court**: Do you wish to say anything, [defense counsel]?
>
> **Defense Counsel**: Yes your Honor. First of all, I would like the record to indicate that clearly that the applications to withdraw this plea is the defendant's application, not his attorney's application. I am not a part of this application. However, even though that is the case, I was – neither was I in a position where I was going back and forth on the date that we took the plea, I mean, there was no question about the fact that Mr. Redd was in court, had access to counsel and that we discussed the matter. We discussed this matter up, down, back, forth, inside out and sideways.
>
> **The Defendant**: He didn't discuss having no weapon.
>
> **Defense Counsel**: It is difficult to understand how he could take the position that he is taking. All of that being said, assuming that the Court will adhere to the terms of the original plea bargain, then I have nothing further to add.

*See* Lyons Decl. Ex. K. Redd was thereupon sentenced, consistent with the plea agreement, to concurrent terms of eight years and five years on the respective counts of conviction.

Redd obtained new counsel to appeal the conviction, arguing that his motion to withdraw the plea should have been granted because: (1) the trial court failed to hold a full hearing on the request; and (2) defense counsel's interest in defending his pre-plea conduct created a conflict, which deprived Redd of his right to counsel. Redd also claimed that his sentence, more than twice the minimum, should have been lower.

On July 2, 2009, the Appellate Division, First Department affirmed Redd's conviction. It held that the trial court "properly exercised its discretion in denying [Redd's] motion to withdraw his guilty plea without a hearing and without appointing new counsel." *People v. Redd*, 64 A.D.3d 418, 418 (1st Dep't 2009). The First Department further found that no conflict existed

where trial counsel "did not join in defendant's motion to withdraw his plea," and "briefly responded to defendant's assertion that counsel had not discussed the plea with him." *Id.* The First Department also declined to reduce Redd's sentence. *Id.* On September 25, 2009, the Court of Appeals denied Redd's request for leave to further appeal his conviction and sentence. *See People v. Redd*, 13 N.Y.3d 799 (2009).

On October 22, 2009, Redd filed this petition for a writ of habeas corpus. Dkt. 1. In this action, he makes the identical arguments his appellate counsel made to the First Department: (1) that the trial court's refusal to allow him to withdraw his plea, especially where counsel contradicted him in open court, violated the Fourteenth Amendment; and (2) that the sentence of eight years, more than twice the statutory minimum, is excessive and thus violates the Fourteenth Amendment. (The Court construes this latter claim to rest on the Eighth Amendment, as incorporated by the Fourteenth.)[3]

On March 9, 2010, respondent filed a declaration and memorandum of law in opposition to the petition. Dkt. 5–6. Respondent argues that: (1) the trial court's denial of Redd's motion to withdraw his plea was not contrary to or an unreasonable application of Supreme Court precedent governing conflicts with counsel; (2) Redd's claim that his eight-year sentence is constitutionally excessive is unexhausted, and therefore procedurally barred; and (3) even if Redd's excessive punishment claim were exhausted, it is not cognizable on habeas review because it is within the range set by state law.

On March 25, 2010, Redd filed a motion to stay this case, so that he could exhaust a number of other claims via a writ of error *coram nobis* in the New York courts. Dkt. 7. On June

---

[3] The Court construes Redd's claim of excessive punishment as arising out of the Eighth Amendment, mindful that Redd is a *pro se* litigant whose arguments must be construed to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation and emphasis omitted)

18, 2010, after an extension, respondent filed a memorandum of law in opposition to the motion to stay. Dkt. 11. On December 3, 2010, the Hon. John G. Koeltl, to whom this case was then assigned, denied Redd's motion to stay, observing both that Redd had provided no cause for the prior failure to exhaust, and that the claims which Redd sought to exhaust (and then add to his habeas petition) were meritless. Dkt. 13. By Order dated August 10, 2011, Judge Koeltl directed Redd to file a reply memorandum of law in support of his petition by September 23, 2011, or the Court would resolve the petition on the basis of the present submissions. Dkt. 14. No reply submission has been received.

## II.     Legal Standard Governing Petitions for Writs of Habeas Corpus

"[B]efore a federal court can consider a habeas application brought by a state prisoner, the habeas applicant must exhaust all of his state remedies." *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (citing 28 U.S.C. § 2254(b)(1)(A)). "'[E]xhaustion of state remedies requires that [a] petitioner fairly present federal claims to the state courts in order to give the [s]tate the opportunity to pass upon and correct alleged violations of its prisoners federal rights.'" *Carvajal*, 633 F.3d at 104 (alterations in original) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)) (per curiam) (additional citations omitted). A habeas petitioner may satisfy the fair presentation requirement by:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Carvajal*, 633 F.3d at 104 (citing *Daye v. Atty. Gen.*, 696 F.3d 186, 194 (2d Cir. 1982) (en banc)) (internal quotation marks omitted).

Where a claim has been fairly presented and adjudicated on the merits, however, "[a]n application for a writ of habeas corpus . . . shall not be granted . . . unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In determining whether a state court's application of federal law was objectively "unreasonable," the Court is to be mindful that "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). Where a state court has previously decided the question, a federal court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

### III. Discussion

As noted, Redd's petition makes two primary claims. The first challenges the process by which the trial court denied his motion to withdraw his plea; the second involves his alleged excessive sentence. Because Redd's second claim is quickly disposed of, the Court addresses it first.

#### A. Redd's Argument That His Sentence is Excessive

Redd claims that his eight-year determinate sentence is excessive, because it is more than twice the minimum to which he could have been sentenced. Redd's appellate counsel raised this very claim in the First Department. There, Redd's counsel relied on N.Y. Crim. Proc. L. § 470.15(2)(c), which gives the Appellate Division broad discretion to reduce an excessive sentence, even in the absence of an abuse of discretion by the trial court which rendered that

sentence. Even if the Appellate Division had misapplied § 470.15(2)(c), however, that claim would not be cognizable on habeas review, because "federal habeas corpus relief does not lie for errors of state law," as "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Thus, to the extent Redd claims the Appellate Division misapplied New York law, the petition must be denied.

Nor could this Court entertain Redd's claim were it recharacterized as asserting excessive, and thereby cruel and unusual, punishment, in violation of the Eighth and Fourteenth Amendments. That is because this claim is unexhausted. 28 U.S.C. § 2254(b)(1)(A). In his brief to the First Department, and in his ensuing letter seeking leave to appeal to the Court of Appeals, Redd argued only that his sentence was excessive under New York law. Although claims of excessive punishment are cognizable under the Eighth Amendment, where, as here, state law provides alternative avenues to challenge a sentence, a defendant's claim in state court of excessive punishment that does not clearly allege a federal constitutional violation is fairly read only to raise that state claim. For this reason, courts in this district have repeatedly held that a prisoner's challenge to a sentence under N.Y. Crim. Proc. L. § 470.15 does not, without more, exhaust an Eighth and Fourteenth Amendment claim for habeas review. *See Santos v. Rock*, No. 10-cv-2896, 2011 U.S. Dist. LEXIS 86370, at *31 n.11 (S.D.N.Y. Aug. 5, 2011); *Cooks v. Graham*, No. 08-cv-3830, 2010 U.S. Dist. LEXIS 95001, at *12 (S.D.N.Y. June 14, 2010); *Merejildo v. Breslin*, No. 05-cv-3111, 2009 U.S. Dist. LEXIS 61407, at *31 (S.D.N.Y. July 16, 2009); *Edwards v. Marshall*, 589 F. Supp. 2d 276, 290 (S.D.N.Y. 2008); *Acosto v. Giambruno*, 326 F. Supp. 2d 513, 521–22 (S.D.N.Y. 2004). Accordingly, Redd's claim is unexhausted.

The Court, however, may reach the merits of a claim for the purposes of dismissing it, pursuant to 28 U.S.C. § 2254(b)(2). It is long-settled that "no federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *see also Stallings v. Heath*, No. 11-cv-4894, 2012 U.S. Dist. LEXIS 30293, at *75 (S.D.N.Y. Mar. 7, 2012); *Orr v. Hulihan*, No. 11-cv-501, 2012 U.S. Dist. LEXIS 90122, at *35 (S.D.N.Y. Jan. 23, 2012); *Gonzalez v. Ercole*, No. 08-cv-403, 2011 U.S. Dist. LEXIS 136912, at *79 (S.D.N.Y. Sept. 22, 2011). Here, the record is unclear whether Redd was sentenced as a persistent felony offender, or as a persistent felony drug offender. As a persistent felony drug offender, he could have received a maximum determinate sentence of 12 years. *See* N.Y. Penal Law § 70.70(3)(b)(i). Had he been sentenced as a persistent felony offender, he could have received a maximum indeterminate sentence of 9 to 25 years. *See id.* § 70.06(3)(b). Thus, either way, Redd's eight-year sentence falls within (or, indeed, below) the range set by New York law. Accordingly, his Eighth Amendment claim is meritless, and his petition, to the extent based on a claim of an alleged excessive sentence, is denied.

**B.    Redd's Argument Regarding the Denial of His Motion to Withdraw His Plea**

Redd also contends that the trial court should have held a hearing before deciding whether to permit him to withdraw his guilty plea to the weapon-possession count, and that his counsel had a "conflict of interest" that led him to contradict Redd in open court. The Court construes Redd to make two distinct arguments: (1) that, as a matter of due process, Redd was entitled to a full hearing before the Court denied his motion to withdraw his plea; and (2) that

counsel's alleged conflict of interest with regard to the withdrawal request deprived Redd of his right to counsel. *See Triestman*, 470 F.3d at 474.[4]

### 1. The Constitution does not require a state court to give a defendant a factual hearing before deciding on a motion to withdraw a guilty plea

Redd's petition, which tracks the arguments his appellate counsel made, asserts that the trial court violated his due process rights by not holding a hearing to determine whether Redd had been misled by his attorney. *See* Lyons Decl. Ex. M, at 11–16. This inquiry turns on whether the process afforded "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Medina v. California*, 505 U.S. 437, 445 (1992) (additional quotation marks and citation omitted). The answer here is no. As the Second Circuit has recognized, "[b]oth federal and state precedent ha[s] established that a defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea," because "the failure to hold an evidentiary hearing on a motion to withdraw a plea does not offend a deeply rooted or fundamental principle of justice." *Hines v. Miller*, 318 F.3d 157, 162 (2d Cir. 2003) (additional citations omitted); *see also Reed v. Brown*, No. 10-cv-3072, 2012 U.S. Dist. LEXIS 1478, at *15–17 (S.D.N.Y. Jan. 6, 2012); *Brown v. LaClaire*, No. 07-cv-5906, 2010 U.S. Dist. LEXIS 30452, at *30 (S.D.N.Y. Mar. 29, 2010). The Court therefore cannot find that the Appellate Division's ruling finding no error in the denial of that hearing was

---

[4] The Court does not interpret Redd to argue that counsel provided ineffective assistance to Redd before the guilty plea, such that Redd's plea was not "knowing and voluntary." *See Boykin v. Alabama*, 395 U.S. 238 (1969). Redd's petition recites the point headings in his appellate counsel's brief in the First Department, and then attaches that brief as an exhibit. *See* Dkt. 1. The brief argues only that the trial court should have provided a full hearing on Redd's motion to withdraw the plea, not that the plea itself was defective. In any event, even if the petition could be construed as a substantive attack on the validity of Redd's plea, that claim is unavailable as a basis for habeas relief, because it is unexhausted. *See* 28 U.S.C. § 2254(b)(1)(A).

contrary to clearly established Supreme Court precedent. Accordingly, this argument for habeas relief fails.

### 2. The First Department's affirmance of Redd's conviction, in spite of counsel's conflict, was not contrary to or an unreasonable application of clearly established Supreme Court precedent

Redd also argues that his Sixth Amendment right to counsel was violated when, during his sentencing, his lawyer, after being called upon by the Court, contradicted Redd's claim that, prior to the guilty plea, counsel had not discussed the weapon-possession count with him. Redd's lawyer stated:

> There was no question about the fact that Mr. Redd was in court, had access to counsel and that we discussed the matter. We discussed this matter up, down, back, forth, inside out and side ways.

Lyons Decl. Ex K, at 7:8–12. Immediately thereafter, Redd's counsel added: "It is difficult to understand how he could take the position that he is taking." *Id.* at 7:15–17. Redd (in his appellate brief, incorporated here) argues that he was effectively denied counsel in the sentencing proceeding, both because he was forced to present *pro se* his motion to withdraw his plea, and because his lawyer effectively served as a witness against his own client. *See* Lyons Decl. Ex. M, at 17–19. The First Department, however, rejected this claim. It held that his lawyer's representations about the events leading to the plea did not deprive Redd of counsel. *See People v. Redd*, 64 A.D.3d 418 (1st Dep't 2009).

Redd's claim is foreclosed by the law of this Circuit, in particular, *Hines v. Miller*, 318 F.3d 157 (2d Cir. 2003). There, the defendant had pled guilty and then, shortly before sentencing, filed a *pro se* motion to withdraw his plea, arguing that his lawyer had coerced him into pleading guilty. *Id.* at 159. As in this case, counsel in *Hines* declined to support that

motion. *Id.* Also as in this case, the guilty plea colloquy in *Hines* had been complete—the defendant was fully advised of his rights and had acknowledged that nobody had forced him to plead guilty, and thereupon allocuted to the crime in question—in that case, second degree murder. *Id.* The trial court denied the defendant's motion and sentenced Hines under the agreement pursuant to which he had pled guilty. *Id.*

Hines then sought habeas review of his conviction. He argued that his Sixth Amendment rights had been violated when he was forced to press his motion to withdraw his plea without the benefit of counsel, his counsel having been conflicted from supporting that motion. The Second Circuit rejected that claim. It noted that:

> [T]he [Supreme] Court has never specifically addressed a claim . . . that [a] petitioner was denied his right to counsel because he was effectively unrepresented on his motion to withdraw his plea . . . or as a claim that petitioner was denied the effective assistance of counsel because an actual conflict of interest [during a motion for plea withdrawal] adversely affected counsel's performance.

*Hines*, 318 F.3d at 163. Accordingly, the Circuit concluded:

> Given the many divergent approaches and outcomes in federal courts that have applied clearly established Supreme Court precedent to the facts at issue and the absence of any Supreme Court decision concerning this type of claim, we find no basis for concluding . . . that the Appellate Division's decision here constituted an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States.

*Id.* at 164. The Court's research has not located any contrary authority.

To be sure, *Hines* is narrowly distinguishable, in that Hines's counsel, although not supporting his client's motion to withdraw the plea, did not undermine it, as Redd's counsel did by representing that Redd had been properly advised as to the gun charge. That distinction, however, does not counsel a different result. First, there is no clearly established Supreme Court precedent addressing the scenario presented here, let alone resolving it in favor of the defendant-

[13]

petitioner. And, second, the Second Circuit in *Hines* effectively anticipated the situation here, noting that the Supreme Court had not addressed a "claim that [a] petitioner was denied the effective assistance of counsel because of an actual conflict of interest" in a plea withdrawal proceeding. *Hines*, 318 F.3d at 163. Thus, the Second Circuit's analysis equally applies where, as here, defense counsel's conflict of interest as to his client's motion for plea withdrawal manifests itself in affirmative, rather than implied, opposition to that motion.

Accordingly, this Court cannot conclude that the prior decisions denying Redd's motion to withdraw a guilty plea, and affirming his conviction pursuant to that plea, constituted an unreasonable application of clearly established Supreme Court precedent. Habeas relief on this ground must, therefore, be denied. *Accord Rodriguez v. Conway*, No. 07-cv-9863, 2009 U.S. Dist. LEXIS 21830, at *83–89 (S.D.N.Y. Mar. 13, 2009) (Report & Recommendation) (citing *Hines* and collecting cases); *Benitez v. Green*, No. 02-cv-6321, 2005 U.S. Dist. LEXIS 1618, at *29–32 (S.D.N.Y. Jan. 28, 2005) (Report & Recommendation) (same).

## CONCLUSION

For the foregoing reasons, Redd's petition is denied. The Clerk of Court is directed to close this case. Because Redd has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2). The Court further certifies that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status will be denied for the purposes of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: July 12, 2012
        New York, New York